**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

**MICHELLE SCHONZEIT**                              *
c/o Goodwin Weber PLLC
267 Kentlands Blvd. #250                            *
Gaithersburg, MD 20878[1]
     Plaintiff                                    *

v.

**RYAN ZINKE, SERETARY**                            *
**U.S. DEPARTMENT OF THE INTERIOR**
**&**                                               *
**DAVID BERNHARDT, DEPUTY SECRETARY**
**U.S. DEPARTMENT OF THE INTERIOR**
Serve:                                              *
1) Ryan Zinke, Secretary
David Bernhardt, Deputy Secretary
Department of the Interior                          *
1849 C Street, N.W.
Washington DC 20240                                 *
&
2) Jessie K. Liu, US Attorney for the District of Columbia
555 4th Street, NW
Washington, DC 20530                                *
&
3) Matthew Whitaker, Acting Attorney General        *
United States Department of Justice
950 Pennsylvania Avenue, NW                         *
Washington, DC 20530-0001

Defendants.                                         *

## <u>COMPLAINT</u>

    1.    As detailed in numerous press reports, the National Park Service ("NPS"), United

States Department of the Interior ("Department of Interior"), has a large sexual harassment and

sexual discrimination problem.

---

[1] Plaintiff is an active federal law enforcement officer. Her home address is thus withheld from public record.

See, *e.g.* https://www.hcn.org/issues/48.21/how-the-park-service-is-failing-women;

*https://www.washingtonpost.com/politics/zinke-pledges-action-on-harassment-inside-park-*

*service/2017/10/13/e2a6477a-b034-11e7-9e58-*

*e6288544af98_story.html?noredirect=on&utm_term=.63e3a48d41ea;*

*https://www.govexec.com/oversight/2018/11/sexual-harassment-continues-infect-forest-service-*

*park-service/152873/* .

2.      This sexual harassment and discrimination has also been well documented by the

NPS and Department of the Interior itself.  In Fall 2017, an NPS study found that 38.7 percent of

NPS employees have experienced some form of harassment, discrimination or sexual assault on

the job over the prior 12 months.  *See* https://www.doi.gov/pressreleases/interior-continues-

steps-toward-department-wide-culture-change-release-work.

3.      "The results of the survey are sobering," stated the Acting National Park Service

Director to reporters.  The Acting Director further stated, "[t]he survey makes it clear that NPS

has a significant problem with harassment. A culture that enables harassment and hostile

workplace behavior has infiltrated our organization."

4.      The Acting Director stated, "to all of the employees and the American people who

have been affected by their harassment, and on behalf of the leadership of the National Park

Service, I want to apologize."

5.      Despite this apology by the then-highest-ranking member of the NPS, sexual

harassment and discrimination within the ranks of the NPS has continued unabated. Indeed, after

the harassment study was released, an Interior Office of Inspector General investigation found

that the next Acting Director of the National Park Service (the Deputy Director P. Daniel Smith)

himself engaged in outrageous conduct in the headquarters of the Interior Department, grabbing his crotch while gesturing at female rangers. The Inspector General's report states, among other things, that the Acting Director's crotch-grabbing was "not appropriate for work." The findings of that Report were referred to Defendants herein, Secretary Zinke and Deputy Secretary Bernhardt.  *See*

*https://www.doioig.gov/sites/doioig.gov/files/InvestigativeSummary_InappropriateConductbyNPSDD.pdf* .  No discipline appears to have been made to the NPS Acting Director.  This has perpetuated the culture of discrimination and harassment that was previously found by the NPS' own harassment study.

6.      Plaintiff, a female Chief Ranger of the NPS, at one of America's most iconic national parks – the Liberty Bell and Independence National Historical Park – birthplace of our Constitution and the concept of equal rights for all -- brings this lawsuit.  Plaintiff is also the mother to a young child, who she hopes may someday be employed without regard to her gender.

7.      Plaintiff alleges rampant sexual discrimination and Prohibited Personnel Practices against female National Park Rangers.  Plaintiff is perhaps the highest-ranking female law enforcement official in the entire NPS, and brings this complaint alleging both disparate impact discrimination (on behalf of all female National Park Rangers), and disparate treatment discrimination (on behalf of the discrimination and retaliation she and her family have suffered).

8.      If discrimination and retaliation can be perpetrated against an NPS Chief Ranger, it can be perpetrated against any female employee of the agency.  The time has come for this pernicious form of discrimination and harassment to end.  Put simply, the #me too movement has now entered the Interior Department.  This suit is brought so that the federal courts can enforce

the preexisting civil rights laws that provide for equal opportunity for all Americans – even in our most cherished and hallowed grounds – our national parks.

9.      Plaintiff, Chief Ranger Michelle Schonzeit, by counsel for Plaintiff, Goodwin Weber PLLC, and David P. Weber and Richard J. Link, attorneys at law, now bring suit against Ryan Zinke, Secretary of the Department of the Interior ("the Agency"), and David Bernhardt, Deputy Secretary, and presumptive nominee to become Secretary, in their official capacities, and in support thereof alleges the following discrimination:

a.      **Gender** in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000 *et seq.*;

b.      **Retaliation** for protected activity under the aforementioned statutes.

c.      Violation of her **privacy** for disclosing confidential information about her EEO Complaint to her co-workers and her supervisory chain of command in violation of 5 USC § 552a.

10.      Jurisdiction is specifically conferred on the Court by 42 U.S.C. § 2000e, 28 U.S.C. § 1343, 28 USC § 1391 and 5 USC § 552a.  Equitable and other relief are also sought under 42 U.S.C. § 2000e-5(g).

11.      Venue is proper in the district court pursuant to 28 U.S.C. §1391(e)1 as well as 42 U.S.C. § 2000e-5(f)(3) in that the events giving rise to Plaintiff's cause of action substantially all occurred in the District of Columbia.

12.      Chief Ranger Schonzeit has exhausted all of her administrative remedies as outlined below:

- On November 6, 2017, she initiated contact with an EEO Counselor;

- On January 9, 2018, Ms. Schonzeit filed a formal complaint of discrimination;

- On March 29,2018, the Agency's EEO Office accepted an amended (supplemental) claim of discrimination;

- On June 26, 2018, the Plaintiff received a Report of Investigation (comprising the Agency's administrative investigation of the Complaint);

- On or about September 23, 2018, the Agency's Office of Civil Rights issued a Final Agency Decision, denying Plaintiff's claims of discrimination.  This FAD was received by counsel on September 26, 2018.   This suit is thus filed within 90 days of both the issuance and receipt of the FAD as required by law.

- This Complaint is being filed somewhat prior to the deadline due to concerns regarding the potential government shutdown, which may impact the NPS, based on current news sources.

## **PARTIES**

13.     Plaintiff, Chief Ranger Michelle Schonzeit, is a United States Citizen and a resident of the State of Maryland. Plaintiff is female.  At all times relevant hereto, Chief Ranger Schonzeit has been employed as a Park Ranger (Protection/Law Enforcement) for the National Park Service, a bureau of the United States Department of Interior.

14.     Defendant Ryan Zinke is the Secretary of the United States Department of Interior.  The President has announced Defendant Zinke's departure at the end of December, after numerous ethical concerns have been raised about the Secretary, and pending OIG investigations are underway.  However, he remains the Secretary as of the date of this suit being filed.  Defendant Ryan Zinke is being sued in his official capacity as Secretary.

15. Defendant David Bernhardt is the Deputy Secretary of Interior. He was personally tasked with addressing the discrimination and harassment within the NPS, and Interior generally. He was on specific notice of the discrimination and retaliation against Chief Ranger Schonzeit, as multiple attempts were made to him, including communication with Defendant Bernhardt directly, to avoid the necessity of filing this suit. It is widely expected that Defendant Bernhardt will become the Acting Secretary of Interior, and that the President may nominate him to serve as the Secretary. He is sued in his official capacity as the Deputy Secretary of Interior.

## FACTS
### Disparate Treatment Facts

16. Chief Ranger Schonzeit is a career employee of the National Park Service. She has served as a law enforcement ranger since 2004.

17. Until April 2017, William Reynolds occupied the position of Regional Chief Park Ranger of the National Capitol Region. Reynolds retired in April 2017.

18. From April 2017 to May 2017, a female employee, Jan Lemmons (a law enforcement ranger) became the acting Regional Chief Park Ranger.

19. In May 2017, NPS detailed Jeremy Murphy (male) to a development detail within the National Capitol Region. Murphy was then the Chief Ranger of Gettysburg National Historical Park. Murphy worked with National Capitol Region Director Robert Vogel during this detail. There was no competition for the detail assignment, nor was the detail announced as was customary for details within the NPS. Also, Murphy was actually detailed outside his usual region (Northeast Region - Gettysburg), and placed in a different region (National Capitol Region).

a. Upon information and belief, Murphy is a referenced supervisory employee in the

Department of Interior's Office of Inspector General Report of Investigation dated November 1,

2018, concerning demonstrated criminal and administrative misconduct within Gettysburg

National Military Park.  A full copy of the redacted Report of Investigation may be read at the

following hyperlink:

https://www.doioig.gov/sites/doioig.gov/files/WebRedacted_GettysburgConflictofInterest.pdf.

The allegation of this subparagraph a. is made upon information and belief because the public

version of the OIG Report of Investigation has been redacted.  Plaintiff has made a request for a

non-redacted version of this ROI through the Freedom of Information Act in December 2018,

but this request remains pending as of the date of suit being filed.  An non-redacted version will

be demanded through discovery in this lawsuit.

20.     On October 17, 2017, the NPS announced the vacancy position for a GS-14

Supervisory Park Ranger position, which was to serve as the Regional Chief Ranger of the

National Capitol Region.  (Announcement #NC-1616-NCRO-18-10062636 – hereinafter

"AN#2636").

21.     On October 20, 2017, Chief Ranger Schonzeit (who was then Deputy Chief

Ranger of Liberty Bell – Independence National Historical Park, and the acting GS-14 Chief

Ranger at Independence) applied for AN#2636.  Chief Ranger Schonzeit had previously been a

GS-13 for more than 52 consecutive weeks.  As of that date, she supervised 35 Rangers, 25

dispatchers, and oversaw a multi-million dollar armed guard contract (with dozens of guards).

As Acting Chief Ranger, and the Deputy Chief Ranger, Schonzeit directed a 24x7 urban law

enforcement operation of one of America's most iconic treasures, the Liberty Bell and

Constitution Hall, the very place where our country's constitution, including the equal protection

clause, was drafted.  This operation was, other than the National Capitol Region, the largest

urban icon park law enforcement operation within the NPS.  She was thus highly qualified for

the vacancy.

22.     On October 25, 2017, Plaintiff's husband, himself a supervisory law enforcement

officer with the United States Park Police ("USPP") (which shares law enforcement authority

over the National Capitol Region, and is a unit of the NPS) spoke to USPP Chief Robert

Maclean, who advised him that Regional Director Vogel wanted to hire Jeremy Murphy (a GS-

12) for the open Regional Chief Park Ranger position in the National Capitol Region. Maclean

and Schonzeit's husband noted in conversation that Murphy was not qualified for the position, as

Murphy did not have 52 weeks time in grade as a GS-13.[2]

23.     AN#2636 was originally scheduled to close on October 31, 2017, but it was

extended to November 7, 2017.

24.     Then, on November 2, 2017, Plaintiff received an email indicating that AN#2636

had been canceled; that a new announcement would be issued on November 3, 2017; and that

Plaintiff would have to reapply for the positon.

25.     On November 3, 2017, a new announcement was issued under NC-1616-NCRO-

18-10076434-ST hereinafter "AN#6434") for a GS-13/14 Supervisory Regional Chief Ranger

position.

26.     By re-announcing the position as a career ladder position (ie, a position advertised

at two different ranks), the NPS violated recent Office of Personnel Management findings, which

---

[2] It should be noted that since the conversation between Plaintiff's husband and the Chief of the U.S. Park Police
was reported to Department of Interior OIG and EEO investigators, Plaintiff's husband has himself been subjected
to prohibited reprisal regarding the terms and conditions of his ongoing employment with the NPS.  His reprisal
complaint remains pending, and will likely be litigated before the Merit Systems Protection Board or this Court in a
future litigation filing.

held that such career ladder announcements were not legally appropriate (because it could lead to discrimination, as alleged here).

27.     By re-announcing the position as a career ladder position, the NPS also violated its own internal agency guidance which prohibited the announcement of such positions as a career ladder.

28.     On November 3, 2017, Dafina Williams (NPS HR Specialist) advised Plaintiff that the Agency had received a sufficient number of applications for the AN#2636.  However, the position was reposted as a GS 13/14 (under AN#6434) because Regional Director Robert Vogel had intervened and instructed the NPS HR to reissue the announcement.

29.     On November 5, 2017, Plaintiff applied for AN#6434.

30.     Plaintiff's name appeared on the Certification list, along with 13 other employees.

31.     Plaintiff was initially interviewed by three male law enforcement employees, to wit: Rick Slade; Charles Cuvelier; and Steven Booker.  Thereafter, Plaintiff submitted to interviews with Ms. Cucurullo and Ms. Mendson-Ielmini, neither of whom had direct law enforcement experience, and reported directly to Regional Director Vogel.

32.     The Agency selected Mr. Murphy for AN#6434.

33.     At the time of his selection, Mr. Murphy was a GS-12 (i.e. a lower grade than Plaintiff).  In addition, he supervised only three GS-9 Rangers.  The park where Mr. Murphy worked (Gettysburg) was not an icon park, and did not have any complex law enforcement or urban operations, in stark contrast to the National Capitol Region (Washington, DC) and the Liberty Bell and Independence National Historical Park (located in downtown Philadelphia).

34.     At the time of her non-selection, Chief Ranger Schonzeit was an acting GS-14 Chief Park Ranger (and the permanent Deputy Chief Ranger).  She met each requirement for the

Regional Chief Park Ranger vacancy:  she had previously been a GS-13 for 52 weeks.  She supervised 35 Rangers, 25 dispatchers, and oversaw multi-million-dollar armed guard contract (with dozens of guards).  Chief Ranger Schonzeit worked at a large urban icon park (which are the parks where national symbols are housed, for which there are 5 parks out of 415 parks or sites).

35.     At the time of her non-selection, Chief Ranger Schonzeit was more qualified and she had more experience than Mr. Murphy in managing a large complex law enforcement organization both in an icon and urban environ such as Washington, DC.  Mr. Murphy had no such qualifications and experience (and in fact, he worked in a small rural national historical park in Gettysburg, Pennsylvania).

a.  At the time of her non-selection, a Department of Interior OIG criminal investigation into conflicts of interest was well underway into Gettysburg National Military Park management. Upon information and belief, this investigation included allegations of misconduct by Jeremy Murphy, the person selected to be the Regional Chief Ranger of the National Capitol Region instead of Plaintiff.  Defendants knew or should have known of this investigation, as they were informed of the ongoing investigation by the Acting Inspector General.  Ultimately, on November 1, 2018, the allegations of criminal conflicts of interest were determined to exist, and a referral for criminal prosecution of one or more supervisory park rangers located in Gettysburg National Military Park were made to the Department of Justice.  *See* https://www.doioig.gov/sites/doioig.gov/files/WebRedacted_GettysburgConflictofInterest.pdf. This investigation, and the investigation's conclusions, is additional evidence that Murphy was not as qualified for the position of Regional Chief Ranger as Plaintiff.

36.     Shortly after her non-selection as Regional Chief Ranger of the National Capitol Region, Schonzeit was selected as the permanent Chief Ranger of Independence National Historical Park, where she is assigned as of the date of this Complaint.  It should be noted that this position is at the same rank and has the same qualifications as the Regional Chief Ranger position in the National Capitol Region.  The difference is that it is located in the Northeast Region, which is headed by a different Regional Director, one that did not discriminate.  The other difference is that her daughter and husband are located in the National Capitol Region.  In other words, she was torn from her family because she had to choose to move to be promoted, when she should have been able to be promoted in her own home commuting area, but for the discrimination alleged here, to be both a federal employee and a mother.   This is not the law, and should not be required of female park rangers anymore within the NPS.

37.     Chief Ranger Schonzeit's selection at Independence is contemporaneous proof that she is exceedingly well qualified for the position of Regional Chief Ranger of the National Capitol Region.  She was not selected because she was a woman, and because senior NPS management, including Regional Director Vogel, intended to hire a man, even if this man was not as well qualified, and upon information and belief, even if this man was under criminal investigation, or participated in conflicts of interest within the NPS.

**Disparate Impact Facts**

38.     The Defendants are responsible for establishing the terms and conditions of employment that relate to the promotion of park rangers on a nationwide basis.

39.     The Defendants have maintained and continue to maintain the selection procedures for promotion of park rangers.

40.     In order to select applicants for promotion at the National Park Service, the Defendants used (and continue to use) a process whereby a select applicant is placed on a detail for a temporary period of time.  During the time that the applicant is on detail, he (and almost always a he) is able to make connections with management officials who will then be responsible for promoting him.  In addition, the detail assignments then afford the applicant with work duties that make him attractive for open management positions.

41.     In addition to the foregoing, in order to select applicants for promotion at the National Park Service, the Defendants have used (and continue to use) the practice whereby the open positions are re-advertised at different grade levels, using different announcement numbers, and different criteria.   The Defendants will routinely modify (or ignore) the OPM standard operating procedures in terms of culling eligible applicants for promotion.  This is done to discriminate, or has the disparate impact of discriminating, even if this is not the intended purpose.

42.     In addition to the foregoing, in order to select applicants for promotion at the National Park Service, the Defendants used (and continue to use) the practice of interviewing applicants for promotions based on subjective impressions rather than objective measures (such as experience in urban law enforcement operations, protection of icon locations, or financial management skills over large park operations).  Indeed, the Defendants permit interviewers to use subjective questionnaires to select applicants.  The Defendants' interview process intentionally or unintentionally favors male (over female) applicants.

43.     The difference between the male and female promotion rate as park rangers is statistically significant on a nationwide basis.

44.     As a direct result of the foregoing practices, male applicants are promoted at significantly higher rates the female applicants on a nationwide basis.

45.     As a direct result of the foregoing practices, male applicants hold virtually all senior management law enforcement positions within the National Park Service.

46.     Female employees at the National Park Service have navigated the complex maze of pre-promotion details, canceling and reposting job announcements and the interview process at statistically lower rates than their male counterparts.  As a consequence, female employees are less likely to proceed through the selection processes and are less likely to be promoted.

47.     The Defendants continue to utilize the same process for selection of its employees to this date.  They are on actual knowledge of the complaints of discrimination in this case, but have taken no steps to address the specific and general injustices that exist here.

48.     Through the use of the foregoing procedures, the Defendants have engaged in a pattern and practice of discrimination in the promotion of female employees to senior management positions at the National Park Service.

49.     In the instant Complaint, Plaintiff challenges the Defendants' use of its detail procedures (or lack thereof); its decision to ignore OPM guidelines and audit conclusions; its decision to fail to follow its own human resources guidance; its decision to cancel and re-advertise open positions; and its unlawful implementation of NPS promotion policy.  The Defendants' employment practices as practiced in the instant case resulted in Plaintiff not receiving a promotion to the Supervisory Regional Chief Ranger position (under the job announcements referenced above).

50.     The Defendants continue to use the same practices that result in the non-selection of female employees to management positions, and these practices have had (and continue to have) an adverse impact on females.

51.     Defendants' use of the practices identified above are not job-related for the supervisory positions at the National Park Service.  Defendants' use of these procedures are not consistent with business or governmental necessity, and do not meet the requirements of Section 703(k) of Title VII, 42 USC 2003-2k.

52.     Defendants have available alternatives for the screening and the promotion of employees, that have less disparate impact on females and would still serve the Defendants' legitimate interest.

53.     Defendants have and continue to use policies and practices that discriminate against women and that deprive or tend to deprive women of employment opportunities because of their sex in violation of Title VII, 42 USC 2000e-2, including, among other ways:

a.  By failing or refusing to promote women for supervisory management positions on the same basis as men.

b.   By using its promotion practices (detailing employees, ignoring OPM guidance, audits, or regulations, ignoring NPS human resources guidance, re-advertising positions, and the use of subjective qualifications), the result has been a disparate impact upon women.  Such results are not consistent with business or governmental necessity, or job requirements.

c.  By failing or refusing to take appropriate action to correct the present effects of Defendants' past (and ongoing) discriminatory policies and practices;

    d.   By failing or refusing to make whole female employees for promotion who have been

harmed by unlawful employment practices referenced above.

54.     The policies and practices referenced above constitute a pattern and practice of

resistance to the full enjoyment by women of their rights to equal employment opportunities,

irrespective of sex, in violation of 42 USC §2003-2.  The pattern and practice is of such a nature

that the practices deny female employees of the rights secured by Title Tile VII.

**CLAIMS FOR RELIEF**
**COUNT I**
**Disparate Treatment Discrimination Under Title VII (Sex)**

55.     Plaintiff incorporates paragraphs 1 through 54 by reference as if fully set forth

herein.

56.     This cause of action arises under Title VII of the Civil Rights Act of 1964, 42

USC §2000e-16, et seq.

57.     Plaintiff was subjected to disparate treatment as it relates to the Defendant

Agency's decision to cancel Vacancy Announcement #NC-1616-NCRO-18-10062636.

58.     Plaintiff is female.

59.     Agency management advised that it had ostensibly pre-selected Mr. Murphy (a

male employee) rather than other applicants for the open position.

60.     OPM had advised the Agency that the position could not be posted as a career

ladder GS-13/14 position.   Rather, it had to be posted at the target level (GS-14).  NPS then

issued human resources guidance directing that such positions must be posted at the target level.

In direct contravention of these OPM and NPS guidelines, the Agency canceled the GS-14

announcement and posted the position as a GS 13/14.   The Agency management circumvented

its own guidance, as well as OPM guidelines.  The purpose of these guidelines and guidance was

15

to prevent the very actions that took place here – intentional or unintentional preference shown to male applicants.

61.     The circumstances under which the announcement was canceled and re-advertised evidence an intention to discriminate.  At the end of the day, Plaintiff (a female) was not selected for the position, and Mr. Murphy, (Male) was selected for the position.

62.     With respect to AN#6434, the Plaintiff was subject to discrimination when she was not selected for the position based on her gender. In contrast to Mr. Murphy, the Plaintiff had superior qualifications experience, work history, and time in grade.

63.     Defendant's illegal discrimination and retaliation has caused Plaintiff to suffer irreparable loss and injury including, but not limited to, economic loss, humiliation, embarrassment, emotional distress, physical harm and deprivation of her right to employment opportunities.  In addition, the Defendant's discriminatory and retaliatory treatment of Plaintiff resulted in loss of pay, retirement benefits, job training, job progression and financial injury.

## COUNT II
## Disparate Impact Discrimination Under Title VII (Sex)

64.     Plaintiff incorporates paragraphs 1 through 63 by reference as if fully set forth herein.

65.     In the instant case, Plaintiff applied for and was denied a promotion to a senior supervisor management position under two job announcements.

66.     In its employment, hiring and promotion practices, the Defendant utilized the practices described above.

67.     The Agency placed Mr. Murphy on a detail for several months just prior to his application.

68.     The Agency ignored OPM directives, and its own internal agency policies.

69.    The Agency re-advertised the position to afford male employees a far greater likelihood of applying for and obtaining the promotion.  Mr. Murphy did not make the initial certification list, and was only able to apply for the promotion when the Agency canceled the initial announcement and re-advertised the position.

70.    The Agency utilized subjective factors in its interview process.

71.    As a direct result of the foregoing, the Agency imposed a set of impediments to obtain a promotion for Plaintiff as a female employee, which, in turn, led to her non-selection.

72.    Defendants' illegal discrimination and retaliation has caused Plaintiff to suffer irreparable loss and injury including, but not limited to, economic loss, humiliation, embarrassment, emotional distress (requiring therapy and treatment), physical harm and deprivation of her right to employment opportunities.  In addition, the Defendants' discriminatory and retaliatory treatment of Plaintiff resulted in loss of pay, retirement benefits, job training, job progression and financial injury.

## COUNT III
### Retaliation

73.    Plaintiff incorporates paragraphs 1 through 72 by reference as if fully set forth herein.

74.    Between January and April 2015, Plaintiff served as the Acting Chief Ranger at Catoctin Mountain Park (Maryland), the location of Camp David, the President's retreat.   In 2015, Plaintiff applied for the position of Chief Ranger, which had been posted as a GS-11/12 position.

75.    Plaintiff worked as the Acting Chief Ranger for several months.  Plaintiff fully expected that she would be promoted to the Chief Ranger position.  However, on or about April 22, 2015, NPS Superintendent Poole called the acting division chiefs into a meeting, and

publicly announced (in the presence of Plaintiff and her colleagues) that he had selected Jeffrey Filosa as the new Chief Ranger.

76.     At the time of his promotion, Jeffrey Filosa (male) in 2015 was working as a GL-9 field ranger at the Great Smoky Mountains National Park.  He had less than two years of full time National Park Service experience, and he had no supervisory experience.  In contrast, Plaintiff had superior qualifications, including supervisory experience and more time with the Agency.

77.     Following her non-selection for the Chief Park Ranger position in 2015, Plaintiff asked Superintendent Poole why she was not selected. Mr. Poole advised Plaintiff *"I have hired women in the past, and I do not believe women should be in law enforcement leadership positions."*  Poole was close friends, and directly supervised by National Capitol Region Director Robert Vogel, the same leader referenced throughout this complaint.

78.     Plaintiff was mortified by her non-selection in 2015, but chose not to rock the boat.  This is because the NPS has a long and storied history of reprising against those who report misconduct within the ranks of the agency.  *See, e.g., http://www.washingtonpost.com/wp-dyn/content/article/2011/01/31/AR2011013105506.html.*  Rather, Plaintiff made the difficult decision to remain silent and to seek employment outside the National Capitol Region (and she transferred to the Northeast Region). In doing so, she was forced to choose her career over her role as a soon-to-be mother to a young child.  This is a decision no national park ranger should ever again be required to take because of illegal discrimination.

79.     In October 2017, Plaintiff applied for the Regional Chief Ranger position in the National Capitol Region under AN#3636.  Plaintiff.  This time, Plaintiff was confident that the Agency had progressed to the point where it would no longer discriminate against female

employees based upon their gender.  She was also attempting desperately to return to the

Washington, DC metro area to raise her daughter , who by this point was being raised primarily

by her husband and father, as she commuted from Philadelphia to Maryland on weekends.

80.     On November 2, 2017, Plaintiff received an email indicating that AN#2636 had

been canceled; that a new announcement would be issued on November 3, 2017; and that

Plaintiff would have to reapply for the positon.

81.     Plaintiff decided that she needed to pursue a discrimination case as the Agency

had clearly not progressed, and it was mired in a culture of gender discrimination.  She retained

counsel and was determined not to allow the Agency to get away with ongoing gender

discrimination.

82.     On November 5, 2017 and again on November 6, 2017, Plaintiff's counsel sent an

email to Agency management officials, placing them on notice that Plaintiff was the victim of

gender discrimination based on her non-selection for AN#2636.  Counsel requested that the

Agency preserve all records pertaining to the cancelled vacancy announcement.  In addition, on

November 6, 2017, Plaintiff initiated EEO counseling with the Defendants' EEO Counselor.

83.     In initiating the EEO counseling and sending the emails, Plaintiff was involved in

protected EEO activity, and clearly was resisting unlawful discrimination.

84.     Shortly after she initiated the EEO process, Plaintiff learned that many managers

in National Park Service headquarters (both law enforcement and non law-enforcement) were

aware of her EEO complaint (even though it should have been confidential at that point).  On

November 8, 2017, Jeremy Murphy "unfriended" Plaintiff on Facebook.

85.     On November 5, 2017, Plaintiff applied for AN#6434.

86.     On or about March 14, 2018, the Agency selected Jeremy Murphy for AN#6434.

87.     After filing her EEO Complaint, Plaintiff's co-workers blackballed her.  It
became quite clear that managers and co-workers did not want to be in meetings with her, nor
did they want to speak to her on the telephone. All such blackballing took place in NPS
headquarters or the National Capitol Region, not the Northeast Region, where she was actually
promoted.

88.     Plaintiff was not selected for AN#6434 and this was reprisal for her prior
protected activity referenced above.  Plaintiff was clearly superior in qualifications to the
selectee (Jeremy Murphy), including, upon information and belief, Murphy's participation in
criminal or administrative conflicts of interest within the NPS.  In addition, the Agency's
mistreatment of Plaintiff since the filing of her EEO complaint was a direct result of her prior
protected activity.

89.     The aforementioned retaliation has caused Plaintiff to suffer irreparable loss and
injury including, but not limited to, economic loss, humiliation, embarrassment, emotional
distress (requiring therapy and treatment), physical harm and deprivation of her right to
employment opportunities.  In addition, the Defendants' retaliatory treatment of Plaintiff resulted
in loss of pay, retirement benefits, job training, job progression and financial injury.

## COUNT IV
## Privacy Act

90.     Plaintiff incorporates paragraphs 1 through 89 by reference as if fully set forth
herein.

91.     Complaints of discrimination and retaliation are supposed to be confidential
personnel records protected by the Privacy Act.  Indeed, the Report of Investigation arising from
the administrative EEO Complaints, on its face, notes that it is protected by the Privacy Act.
Nonetheless, numerous officials throughout the Department of Interior and NPS have become

aware of her EEO Complaint prior to initiating this lawsuit, in most cases with no

communication at any time with Plaintiff or her counsel.

92.     Within days of filing her initial EEO Complaint for her non-selection under

AN#2636, Jeremy Murphy "unfriended" Plaintiff on Facebook.  This action was plainly because

Murphy had been advised of Plaintiff's complaints by NPS personnel.

93.     In addition, after filing her EEO Complaint, Plaintiff's co-workers blackballed

her.  It became quite clear that managers and co-workers in headquarters or the National Capitol

Region did not want to be in meetings with her, nor did they want to speak to her on the

telephone. This action was plainly because the co-workers and supervisors had been advised of

Plaintiff's complaints.

94.     Plaintiff has been directly harmed as a result of the Agency's dissemination of the

confidential information pertaining to her EEO Complaint. This has caused Plaintiff to suffer

irreparable loss and injury including, but not limited to, economic loss, humiliation,

embarrassment, emotional distress (requiring therapy and treatment), physical harm and

deprivation of her right to employment opportunities.  In addition, the Defendants' conduct

resulted in loss of pay, retirement benefits, job training, job progression and financial injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MICHELLE SCHONZEIT, requests that this Court enter

judgment in her favor and award her the following relief:

A.  Declare that the actions of Defendants constitute discrimination and retaliation in

violation of Title VII of the Civil Rights Act of 1964.

B.  Order Defendants to cease and desist from all future discrimination and retaliation

against Plaintiff and other women within the NPS and Department of Interior.

C. Award Plaintiff economic and non-economic damages in an amount to be determined at trial, for her loss and injury including, but not limited to, economic loss, embarrassment, humiliation, emotional pain and suffering, physical injuries, inconvenience, and other non-pecuniary losses and deprivation of her right to equal employment opportunities, in an amount to be determined, but in no event less than $400,000.00 and/or the maximum permitted by law for each violation.

D. Award Plaintiff all lost salary and benefits that she would have received had Defendants not engaged in unlawful discrimination and retaliation, including appropriate back pay, benefits and front pay.

E. Order the Defendants to give a positive recommendation when contacted by prospective employers of Plaintiff.

F. Order the Defendants to give positive and appropriate preferential consideration for any employment positions she may apply for.

G. Award Plaintiff prejudgment interest.

H. Award Plaintiff reasonable attorney's fees and costs incurred in this action and the administrative claim that preceded it;

I. Award such other relief as the Court deems appropriate and just.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedures, Plaintiff requests a trial by jury as to all issues in this case.

Respectfully Submitted,


  /s/   David P. Weber    
DAVID P. WEBER, #468260


  /s/   Richard J. Link   
RICHARD J. LINK, #443609

Counsel for Plaintiff
GOODWIN WEBER PLLC
267 Kentlands Boulevard, Suite 250
Gaithersburg, MD 20878
(301) 850-7600 x 101 (David P.Weber)
(301) 850-7600 x 103 (Richard J. Link)
(301) 850-3374 Fax
David.weber@goodwinweberlaw.com
Richard.Link@goodwinweberlaw.com